**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
IN THE MATTER OF A NON-PARTY                :
DOCUMENT SUBPOENA SERVED IN:           :
                                                              :   Misc. Civil Case No. _____
ED BUTOWSKY,                                         :
                                                              :
                          Plaintiff,                      :   **ORAL ARGUMENT REQUESTED**
              v.                                            :
                                                              :
DAVID FOLKENFLIK, *et al.*,                    :
                                                              :
                          Defendants.                  :
                                                              :
------------------------------------------------------------ X


## NON-PARTY WIGDOR LLP'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH ED BUTOWSKY'S DOCUMENT SUBPOENA


LOEB & LOEB LLP

Michael P. Zweig
John A. Piskora
345 Park Avenue
New York, NY 10154
(212) 407-4000

*Attorneys for Non-Party Movant*
*Wigdor LLP*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF RELEVANT FACTS .............................................................3

      A.    News Reports Concerning Seth Rich's Murder Give Rise to Litigation...........................................................................................3

      B.    Butowsky Threatens Wrongful and Abusive Retaliatory Litigation............................................................................................5

      C.    The Underlying Action – Butowsky v. Folkenflik, et al............................7

      D.    Butowsky's Subpoena to Wigdor .................................................9

ARGUMENT ......................................................................................................11

   I.    WIGDOR'S MOTION TO QUASH IS PROPERLY BEFORE THIS COURT .............................................................................................11

   II.    THE NON-PARTY SUBPOENA TO WIGDOR MUST BE QUASHED TO THE EXTENT IT SEEKS DISCLOSURE OF PRIVILEGED OR OTHERWISE PROTECTED MATERIALS ........................11

   III.    THE NON-PARTY SUBPOENA TO WIGDOR MUST BE QUASHED BECAUSE IT WAS BROUGHT FOR AN IMPROPER, HARASSING PURPOSE AND WOULD IMPOSE AN UNDUE BURDEN UPON WIGDOR .................................................................14

      A.    The Subpoena Should Be Quashed Because Butowsky Issued the Subpoena for Improper Purposes and to Harass Wigdor ....................14

      B.    The Subpoena Should Be Quashed Because It Seeks Irrelevant Materials and Otherwise Would Impose an Undue Burden Upon Non-Party Wigdor.......................................................................18

           1.    The Requests For Litigation Files Are Irrelevant and Unduly Burdensome ........................................................19

           2.    The Requests Seek Materials Available to the Parties In the Folkenflik Action and/or Materials That Are Publicly Available.........................................................21

i

3.      Butowsky's Requests Seeking Additional
Communications Are Overly Broad and Irrelevant ......................22

IV.     TO THE EXTENT THAT ANY COMPLIANCE WITH THE SUBPOENA IS
ORDERED, BUTOWSKY MUST BE REQUIRED TO PAY WIGDOR'S
REASONABLE COSTS AND EXPENSES ....................................................23

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
No. 19 Misc. 384 (AT), 2019 U.S. Dist. LEXIS 152073
(S.D.N.Y. Sept. 6, 2019)................................................................21, 22

*Anwar v. Fairfield Greenwich Ltd.*,
297 F.R.D. 223 (S.D.N.Y. 2013) ....................................................19

*In re BCE West, L.P.*,
2000 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug. 31, 2000)......................14

*Blake Marine Grp., LLC v. Frenkel & Co.*,
No. 18-CV-10759 (AT) (KHP), 2019 U.S. Dist. LEXIS 66399
(S.D.N.Y. Apr. 16, 2019).............................................................19

*Bogan v. NW. Mut. Life Ins. Co.*,
163 F.R.D. 460 (S.D.N.Y. 1995) ....................................................12

*Bogosian v. Woloohojian Realty Corp.*,
323 F.3d 55 (1st Cir. 2003)......................................................... 14-15

*Burns v. Bank of America*,
No. 03 Civ. 1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037
(S.D.N.Y. June 4, 2007).............................................................16, 21

*In re Candor Diamond Corp.*,
26 B.R. 847 (S.D.N.Y. 1983).........................................................15

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................20, 21

*GMA Accessories, Inc. v. Electric Wonderland, Inc.*,
No. 07 Civ 3219 (PKC)(DF), 2012 U.S. Dist. LEXIS 72897
(S.D.N.Y. May 22, 2012)............................................................ 22-23

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
No. 12-CV-5067 (JFK)(JLC), 2017 U.S. Dist. LEXIS 171685
(S.D.N.Y. Oct. 17, 2017) ..........................................................11, 18, 19

*J. & W. Seligman & Co. v. Spitzer*,
No. 05 Civ 7781 (KMW), 2007 U.S. Dist. LEXIS 71881
(S.D.N.Y. Sept. 26, 2007)............................................................16

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-cv-1318 (GBD)(BCM), 2018 U.S. Dist. LEXIS 205600
    (S.D.N.Y. Nov. 30, 2018) ...................................................................................................18

*Kirschner v. Klemons*,
    No. 99 Civ. 4828 (RCC), 2005 U.S. Dist. LEXIS 9803
    (S.D.N.Y. May 18, 2005) ....................................................................................................23

*Mackey v. IDT Energy, Inc.*,
    No. 19 Misc. 29 (PAE), 2019 U.S. Dist. LEXIS 77101
    (S.D.N.Y May 7, 2019) ..................................................................................................18, 19

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15 Civ. 748 (CM), 2017 U.S. Dist. LEXIS 139983
    (S.D.N.Y. Aug. 30, 2017) ....................................................................................................24

*Rich v. Fox News Network, LLC*,
    No. 18-2321-CV, 2019 U.S. App. LEXIS 27633 (2d Cir. Sept. 13, 2019) ............................4

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*,
    No. 09-CV-3855 (JS) (AYS), 2018 U.S. Dist. LEXIS 58729
    (E.D.N.Y. Mar. 31, 2018) ....................................................................................................24

*Sonoma County Ass'n of Retired Employees v. Sonoma County*,
    No. 15 Misc. 191 (LTS), 2015 U.S. Dist. LEXIS 177919
    (S.D.N.Y. Oct. 6, 2015) ......................................................................................................24

*United States v. Int'l Business Machines Corp.*,
    83 F.R.D. 97 (S.D.N.Y. 1979) .............................................................................................23

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011) .................................................................................................12

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811 (CM), 2012 U.S. Dist. LEXIS 158448
    (S.D.N.Y. Nov. 5, 2012) .......................................................................................................23

*West Chelsea Bldgs. LLC v. United States*,
    109 Fed. Cl. 5 (Fed. Cl. 2013) .............................................................................................17

## Other Authorities

Fed. R. Civ. P. 26 ................................................................................................... *passim*

Fed. R. Civ. P. 45 ................................................................................................... *passim*

Fed. R. Evid. 408 .......................................................................................................14

iv

Non-Party Wigdor LLP ("Wigdor"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure ("Rule"), seeking the entry of an Order: (a) quashing the July 24, 2019 document subpoena (the "Subpoena") issued by counsel for Ed Butowsky in connection with a civil action currently pending before the United States District Court for the Eastern District of Texas entitled *Butowsky v. Folkenflik* (No. 18 Civ. 442 (ALM)(CMC) (E.D. Tex.) (the "Underlying Action" or the "*Folkenflik* Action"), with costs and reasonable expenses to Wigdor; or, in the alternative (b) modifying the Subpoena and directing Butowsky to pay Wigdor's reasonable costs and expenses incurred in respect to any required compliance with the Subpoena.

## PRELIMINARY STATEMENT

Following the tragic death of Seth Rich, a Democratic National Committee ("DNC") staffer, Butowsky undertook to spin a fringe political conspiracy theory concerning Rich's death into one that would be worthy of publication by Fox News (a television network that frequently hosted Butowsky as a "contributor"). Fox News later retracted the story, but its initial publication sparked a number of civil actions (defamation related) – including an action by investigator Rod Wheeler (represented by Wigdor) against Fox News and Butowsky, among others.

Butowsky separately convinced himself that the world had conspired to defame *him*, and he publicly stated his intention to seek retribution against his adversaries and the counsel that represented them: "**I'm going to sue the hell out of a lot of firms.  I want to see these people choke on their nerves and go through the same crap I had to go through**." Butowsky made good on his threat of litigation – suing a number of law firms and attorneys in numerous separate actions seeking well over $100 million in purported damages.  He also issued the non-party document Subpoena to Wigdor, the subject of the current proceeding, in a further attempt to

wrongly harass and burden the firm.  For each of the independent reasons set forth herein, the Subpoena must be quashed.

*First*, Butowsky's Subpoena to Wigdor purposefully and broadly seeks to run roughshod over the attorney client privilege and/or the attorney work-product doctrine by requesting voluminous, protected and confidential law firm files concerning wholly irrelevant matters.  In issuing the Subpoena, Butowsky and his counsel were obligated to steer clear of infringing upon such protections – but they took the opposite approach.  Because the Subpoena indisputably calls for the production of privileged materials, it "must" be quashed pursuant to Rule 45(d)(3)(A)(iii).

*Second* and independently, the Subpoena should be quashed because it was clearly issued for improper purposes, including Butowsky's stated purpose of harassment and oppression.  That the Subpoena requests materials that are wholly irrelevant to the Underlying Action makes clear that the non-party Subpoena is a transparent and improper attempt to obtain pre-motion discovery in Butowsky's wrongfully initiated suit against Wigdor.  Such a procedural and discovery "end-run" cannot be condoned.

*Third*, pursuant to Rule 45(d)(3)(A)(iv), the Subpoena should be quashed in its entirety because its facially overbroad requests would improperly impose an undue burden upon non-party Wigdor.  The Subpoena primarily seeks irrelevant materials, documents that can readily be obtained from the parties in the Underlying Action, and/or materials that are publicly available.  Were Wigdor to be required to search for responsive documents and electronically stored information, the firm would face a Herculean task in reviewing and identifying the materials to be listed on a privilege log.  Because the Federal Rules prohibit the imposition of such an undue burden upon Wigdor, the Subpoena must be quashed in its entirety.

## STATEMENT OF RELEVANT FACTS

**A.**     **News Reports Concerning Seth Rich's Murder Give Rise to Litigation**

The chain of events that gave rise to the issuance of Butowsky's non-party document Subpoena to Wigdor stem from Butowsky's attempts to convert the tragic murder of DNC staffer Seth Rich into a political conspiracy worthy of a national news report by Fox News (a story long-since retracted).  The Second Circuit Court of Appeals, in a recent opinion involving the affair, succinctly summarized those events:

> On July 10, 2016, Seth Rich—a 27-year-old DNC staffer—was shot and killed a few hundred feet from his home in Washington, D.C.  The Metropolitan Police Department determined, and continues to believe, that his unsolved murder stemmed from a botched robbery.

> Soon after Seth's death, a "conspiracy theory" emerged among "fringe" political groups.  The theory was that "Seth had leaked thousands of DNC emails to WikiLeaks" and was murdered as a result. . . . Seth's parents, the Riches, objected to this theory and issued a statement asking the public to "refrain from pushing unproven and harmful theories about Seth's murder."  Despite this statement, the Appellees [*e.g.,* Fox News and its reporter Malia Zimmerman] in the case before us set out "to take the conspiracy theory from the fringe [and move it] to the front pages and screens of the mainstream media."  […]  To do this, they allegedly orchestrated a plan to turn the Riches into unwitting collaborators in their scheme. […]

> Specifically, in December 2016, Ed Butowsky, a guest commentator on Fox News, contacted Seth's parents, Joel and Mary Rich. . . .

> Playing on the Riches' need to "to get closure, as a family," Butowsky urged them to allow him to pay for [Rod] Wheeler's services [*e.g.,* investigative services]. . . . Butowsky falsely assured the Riches that, "although he would finance Joel and Mary's retention of Wheeler, Butowsky would respect Wheeler's legal obligation not to speak to him [] or anyone other than Joel and Mary about the investigation."  In the end, Joel and Mary were persuaded. . . .

> On May 10, in order to bring the untrue story to publication, Butowsky and Zimmerman called Wheeler "to falsely inform him that they had developed an FBI source supposedly confirming" that Seth had been in contact with WikiLeaks. . . .

> Soon after, Wheeler became the named source in the Fox News articles about Seth's murder.  […]

> On May 18, the Riches formally asked Fox to retract the story. . . .  Five days later, Fox retracted the story because "[t]he article was not initially subjected to [a] high degree of editorial scrutiny."

*See Rich v. Fox News Network, LLC*, No. 18-2321-CV, 2019 U.S. App. LEXIS 27633, at \*3-\*11 (2d Cir. Sept. 13, 2019) (internal citations omitted).

In 2017, Wigdor (a small litigation firm specializing in plaintiffs'-side employment and sexual assault litigation) was engaged by Rod Wheeler, and served as Wheeler's counsel in the civil action filed on his behalf against Fox News and Butowsky, among others, entitled *Wheeler v. Twenty-First Century Fox, et al.*, (No. 17 Civ. 5807 (GBD) (S.D.N.Y.)) (the "*Wheeler* Action").  *See* Declaration of Douglas H. Wigdor, dated September 30, 2019 ("Wigdor Decl.") at ¶¶ 3-5.  Wigdor withdrew as counsel for Wheeler in the *Wheeler* Action with leave of the Court granted on May 30, 2018.  *Id*. at ¶11.  In a Memorandum Decision & Order, dated August 2, 2018, this Court (Hon. George B. Daniels) dismissed Wheeler's claims and denied Butowsky's separate motion for Rule 11 sanctions. *See id.* at ¶ 20.

In 2018, Joel and Mary Rich (the parents of Seth Rich), by their counsel Susman & Godfrey LLP, commenced a separate action before this Court against Fox News and Butowsky, among others, entitled *Joel and Mary Rich v. Fox News Network, LLC, et al.*; No. 18 Civ. 2223 (GBD) (S.D.N.Y.) (the "*Rich* Action").  *See* Wigdor Decl. at ¶ 24.  On the same day that the *Wheeler* Action was dismissed, Judge Daniels issued a separate Order dismissing the *Rich* Action (which order was the subject of the appeal discussed above).  *Id.*

B.      **Butowsky Threatens Wrongful and Abusive Retaliatory Litigation**

Just days after the District Court's August 2, 2018 dismissal of the claims asserted in the *Wheeler* Action and the *Rich* Action, Investment News published an August 6, 2018 article quoting Butowsky as stating: "Anybody who did anything negative to me as a result of the lawsuit will pay. […]  **I'm going to sue the hell out of a lot of firms.  I want to see these people choke on their nerves** and go through the same crap I had to go through."  *See* Wigdor Decl. at ¶¶ 21-22 and **Exhibit 3**.  Indeed, even before this public statement, Butowsky had been harassing Wigdor and its employees with a barrage of unnecessary and threatening telephone calls and communications.  *See* Wigdor Decl. at ¶¶ 12-19, 30.

Butowsky (with the assistance of counsel with checkered and extensive histories of misconduct and discipline (including discipline stemming from conduct arising while practicing before this Court) (*id.* at ¶ 22 and n.1) made good on his retaliatory threats to sue "the hell out of" his legal adversaries:

- On March 6, 2019, Butowsky filed a lawsuit against Susman & Godfrey (counsel for the Riches) in the 416th District Court in Collin County, Texas, entitled *Butowsky v. Susman & Godfrey, LLP*, No. 416-01222-2019, alleging, *inter alia*, defamation and malicious prosecution (the "*Susman* Action").  *Id.* at ¶ 23.[1]

- On March 12, 2019, Butowsky initiated a separate lawsuit entitled *Butowsky v. Gottlieb, et al.*, No. 19 Civ. 0180 (ALM)(KPJ) (E.D. Tex.) (the "*Gottlieb* Action").  There, Butowsky sued no less than nine attorneys (including attorneys from Susman &

---

[1]  The *Susman* Action was dismissed on June 21, 2019 by the Honorable Andrea S. Thompson, who held that Butowsky had failed to establish a *prima facie* case for each essential element of his claims, and that Susman & Godfrey established the evidence the defense of attorney immunity.  *Id.* at ¶ 25.

Godfrey), three different law firms (including counsel for Seth Rich's brother, Aaron Rich, Boies Schiller & Flexner LLP and Massey & Gail, LLP, as well as Bailey & Glasser LLP), Turner Broadcasting System, Inc. (*i.e.*, CNN), television personality Anderson Cooper, the New York Times, and Vox Media.  Butowsky alleges claims of, *inter alia*, defamation, business disparagement, malicious prosecution, and civil conspiracy.  *Id.* at ¶¶ 26-27.

- On July 31, 2019, and notwithstanding the fact that Wigdor has absolutely no contacts with Texas and that Butowsky expressly waived all such claims in a written agreement (as discussed below), Butowsky filed an action in Texas entitled *Butowsky v. Wigdor, et al.*, No. 19 Civ. 0577 (ALM) (E.D. Tex.) (the *Wigdor* Action) against Wigdor, its founding partner Douglas H. Wigdor, and Mr. Wheeler.  Therein, Butowsky alleges claims for defamation, business disparagement, civil conspiracy, and civil RICO, and seeks "compensatory damages, Punitive damages and Treble damages in the sum of $118,000,0000.00 or such greater amount as is determined by the Jury."  *Id.* at ¶ 33 and **Exh. 6**.  To date, Butowsky has not served the Summons and Complaint in the *Wigdor* Action.  *Id.*

- On August 1, 2019, Butowsky initiated another lawsuit, filed as a related action to the *Gottlieb* Action, entitled *Butowsky v. Democratic National Committee, et al.*, No. 19 Civ. 582 (ALM) (E.D. Tex.) (the "*DNC* Action").  Therein, Butowsky asserts claims against Perkins Coie LLP, the DNC, and an internet security company called CrowdStrike, Inc., alleging, *inter alia*, defamation, business disparagement, malicious prosecution, and civil

conspiracy, including an alleged conspiracy with the attorneys and law firms named in the *Susman* Action and *Gottlieb* Action to defame him. *Id.* at ¶ 28.[2]

**C.**     **The Underlying Action – *Butowsky v. Folkenflik, et al.***

On June 21, 2018, Butowsky filed the Underlying Action against defendants National Public Radio, Inc. ("NPR"), David Folkenflik (an NPR reporter) and a number of additional NPR employees. *See* Wigdor Decl. at ¶ 35; *see generally Butowsky v. Folkenflik*, No. 4:18-cv-442 (ALM) (CMC) (E.D. Tex.).

In his Amended Complaint in the *Folkenflik* Action, Butowsky alleges, *inter alia*, claims for defamation, business disparagement, and civil conspiracy, and seeks a compensatory damages award of no less than $57,000,000, in addition to punitive damages and interest. *See* Wigdor Decl., Exhibit 2. The details of the claims can be fairly summarized as follows:

The Defamation and Business Disparagement Claims: Butowsky alleges that NPR and reporter Folkenflik defamed him and/or caused business disparagement by publishing certain damaging articles and tweets about him. *See* Wigdor Decl., **Exh. 2** (Am. Cmplt.) at ¶¶ 173-180 (defamation claim) and ¶¶ 181-186 (business disparagement). As can be discerned from the Amended Complaint, the alleged defamatory or disparaging statements concern the Fox News report as to Seth Rich's murder, and were published by defendants in the following publicly-available materials:

---

[2]  It should be noted that a year earlier, on August 3, 2018, Butowsky (together with his investment company, Chapwood Capital Investment Management, LLC) also filed a lawsuit against Charles Schwab Corporation and others entitled *Butowsky v. Charles Schwab Co., et al.*, No. 18 Civ. 0548 (ALM) (KPJ) (E.D. Tex.) (the "*Charles Schwab* Action"). Therein, Butowsky alleged claims of defamation, business disparagement, tortious interference and breach of contract, and sought $100,000,000.00 in compensatory damages in addition to punitive damages and interest. This litigation was compelled to arbitration in March 2019. *Id.* at ¶ 29.

- An August 1, 2017 NPR article entitled *Behind Fox News' Baseless Seth Rich Story: The Untold Tale* (stating that Fox News' May 16, 2017 story about Seth Rich was "baseless," a "fake news story," and that the "fake news [was] promoted by Butowsky and Zimmerman.");

- Statements alleged to be attributable to Folkenflik as stated in an August 7, 2017 article published by a non-party ("www.mediaite.com") concerning the "Seth Rich Conspiracy" (attributing the following statements to Folkenflik: "'[C]ollaboration' between Butowsky and the President 'is still a plausible assumption with the current evidence'"; and that "Butowsky's narrative is 'inconsistent'");

- An August 7, 2017 NPR article entitled *Fox News' Seth Rich Story Echoes Previous Problems For Owner Rupert Murdoch* (which makes no reference to Butowsky, but states that "Murdoch's Fox News concocted a story on the killing of a young Democratic aide in order to help President Trump");

- An August 16, 2017 NPR article entitled *The Man Behind The Scenes In Fox News' Discredited Seth Rich Story* (allegedly identifying Butowsky as the man behind the scenes, and stating "Butowsky displays no curiosity about the way Fox's reporting and his activities affected the very people [the Rich Family] he says he sought to help.");

- An August 16, 2017 "tweet" by Folkenflik (referring to: "My deep dive on Ed Butowsky, the financial talking head who helped to propel Fox News' discredited Seth Rich story," and stating "Ed Butowsky is the money manager who played a key role in a since-retracted Fox News expose about the murder of a young Democratic Party aide");

- A September 15, 2017 NPR article entitled *No Apology, No Explanation:  Fox News And The Seth Rich Story* (noting that Fox News "was compelled to retract the story," and that "In the four months since its retraction, Fox News has not apologized for what it reported."; separately stating that "A Dallas investment manager and Trump supporter named Ed Butowsky helped orchestrate the Fox News story. . . .  Butowsky fed tips to Wheeler and Zimmerman, the Fox reporter, as he sought to link the dead man to the leaked e-mails instead of hackers working on behalf of the Russians. . . .  In a three-way taped conversation that took place a few hours after the Rich story ran, Butowsky and Zimmerman conceded Wheeler had never said what her story claimed");

- A September 19, 2017 NPR article entitled *Fox News Fights Back On Lawsuit Filed Over Seth Rich Story* (stating that Butowsky "is a Dallas investment manager and supporter of President Trump's who worked behind the scenes to try to link Rich to the leak of the Democratic e-mails as a way of deflecting criticism of the president.");

- March 13 to 14, 2018 "tweets" by Folkenflik (stating: "My story on Ed Butowsky, the Dallas investor and Trump backer who arranged for investigator Rod Wheeler to work on [the] Rich Family's behalf – but reporting secretly to him." And "Ed Butowsky is the money manager who played a key role in a since-retracted Fox News expose about the murder of a young Democratic Party aide").

*See* Wigdor Decl., **Exh. 2** (Am. Cmplt.) at ¶¶ 5, 37-38, 47, 58, 60-64.

The Civil Conspiracy Claim:   Butowsky separately alleges that the defendants in the *Folkenflik* Action purportedly conspired and/or agreed with Mr. Wigdor to engage in a pattern of alleged defamation for the purpose of harming Butowsky.   *See* Wigdor Decl., **Exh. 2** (Am. Cmplt.) at ¶¶ 187-194.   Butowsky claims that as a result of this alleged conspiracy, defendants are liable for Mr. Wigdor's public statements (similarly alleged to be defamatory), including statements made in publicly-available "tweets" and interviews; a letter to British regulators (alleged to be publicly-available on www.thedailybeast.com); and publicly-available articles published by the New York Times, Bloomberg Businessweek, and Wigdor itself.  *See id.*, **Exh. 2** (Am. Cmplt.) at ¶¶ 189(a)-(k), 191-192.

**D.**   **Butowsky's Subpoena to Wigdor**

Butowsky, by his counsel, issued a non-party document Subpoena to Wigdor, dated July 24, 2019, in connection with the *Folkenflik* Action.  *See* Wigdor Decl., **Exh. 1**.  Notwithstanding that Butowsky and his counsel are well aware that Wigdor is a law firm that represented a number of separate clients with respect to claims and/or litigation against Fox News (*id.*, **Exh. 2** (Am. Cmplt.) at ¶ 29) and, thus, that Wigdor's files and communications would be protected from disclosure pursuant to the attorney-client privilege, attorney work-product doctrine, as well as other privileges, Butowsky's "SUBPOENA SEEKS DOCUMENTS THAT MENTION BUTOWSKY OR FOX NEWS OR THAT ARE OF AND CONCERNING BUTOWSKY OR FOX NEWS." *Id.,* **Exh. 1** (Subpoena) at 3 (emphasis in the original), Request 14 (seeking "[a]ll documents that constitute, evidence or reflect communications by and between Wigdor and Fox News").  The request for virtually all of Wigdor's litigation files in matters against Fox News, together with Butowsky's numerous other requests for Wigdor attorney work-product notes that

"reflect" discussions with potential witnesses and/or investigatory journalists, is patently improper because it plainly seeks the production of privileged and/or attorney work-product materials.

Nor are the remainder of the Subpoena requests at all proper.  As to Requests Nos. 1-2 (communications/conversations/recordings with <u>Folkenflik</u>); Request No. 3 (documents provided to <u>Folkenflik or NPR</u>); Request No. 5 (communications authored by <u>Butowsky</u>); Request No. 7 (communications between Wheeler and <u>Folkenflik</u>); Request No. 8 (communications between Wheeler and <u>Butowsky</u>) – all of these Requests seek documents or other materials that can be sought from and produced by the parties in the Underlying Action.  *Id.*

The remainder of the Subpoena Requests seek communications between various non-parties with no conceivable (or alleged) connection to the underlying purported "conspiracy" between Wigdor and NPR/Folkenflik:  the members of the Rich Family, Fox News and Malia Zimmerman, as well as MSNBC, CNN, Ofcom, The New York Times, Bloomberg Businessweek, and CNBC.  *See id.*, **Exh. 1** (Subpoena) at Requests Nos. 6, 9-20.  These Subpoena Requests are improper and should be quashed because: (a) <u>all of the alleged "defamatory" materials published by non-parties are publicly available</u> (including any Wigdor and/or Douglas Wigdor "tweets" or press releases that may be responsive to Request No. 4) and, as Butowsky's Amended Complaint itself establishes, these materials are already in Butowsky's possession, as Butowsky's pleading provides images thereof, quotes them extensively, and/or provides internet addresses detailing where the materials can be publicly located (*see generally id.,* **Exh. 2** (Am. Cmplt.)); and (b) to the extent there are any other communications, such materials are not at all relevant to the claims or defenses in the *Folkenflik* Action, nor is a search for such irrelevant materials proportional to the needs of the Underlying Action.

## ARGUMENT

### I.     WIGDOR'S MOTION TO QUASH IS PROPERLY BEFORE THIS COURT

Wigdor's motion to quash is brought before this Court, in accordance with Rule 45(d)(3), as non-party Wigdor is located in Manhattan and the Subpoena seeks compliance in this District. *See* Rule 45(d)(3)(A) (providing grounds to quash non-party subpoena by "the court for the district where compliance is required"); *see also* Wigdor Decl., **Exh. 1** (Subpoena) (seeking compliance in this District).

Further, Wigdor's motion is indisputably timely.  Although the Subpoena is dated July 24, 2019 and attempts were made to effect service in the days thereafter, Wigdor (by its counsel) requested, and was granted, until September 30, 2019 to respond to the Subpoena (preserving all of Wigdor's defenses thereto).  *See* Wigdor Decl., Exhs. 7-8.[3]

### II.    THE NON-PARTY SUBPOENA TO WIGDOR MUST BE QUASHED TO THE EXTENT IT SEEKS DISCLOSURE OF PRIVILEGED OR OTHERWISE PROTECTED MATERIALS

In issuing the non-party document Subpoena to Wigdor – a law firm that Butowsky and his counsel were well aware had served as counsel in numerous disputes against Fox News (*see* Wigdor Decl., **Exh. 2** (Am. Cmplt.) at ¶ 17 (referencing 13 such clients) and ¶ 29 (listing 7 civil actions, not including the *Wheeler* Action)) – Butowsky made no effort whatsoever to seek relevant, particularized documentary materials that did not intrude upon the attorney-client privilege or attorney work-product doctrine.  Rather, to harass and unduly burden Wigdor (a firm

---

[3]  Where (as here) a subpoena is found to be overbroad and "exceed[ing] the bounds of fair discovery," objections to the subpoena are not waived.  *See, e.g., Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067 (JFK)(JLC), 2017 U.S. Dist. LEXIS 171685, at *49-50 (S.D.N.Y. Oct. 17, 2017) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

he's stated he wants to "sue the hell out of"), Butowsky purposefully sought the production of virtually all of Wigdor's litigation records in *any* matter (publicly-filed or otherwise) against Fox News, or otherwise "mentioning" or "concerning" Fox News or Butowsky.  *See* Wigdor Decl. **Exh. 1** (Subpoena) at 3 ("THIS SUBPOENA SEEKS DOCUMENTS THAT MENTION BUTOWSKY OR FOX NEWS OR THAT ARE OF AND CONCERNING BUTOWSKY OR FOX NEWS.") (emphasis in the original).  Butowsky's requests for the production of protected materials is plainly improper, and the Subpoena should accordingly be quashed.  *See* Fed. R. Civ. P. 26(b) (providing that the scope of permissible discovery is limited to nonprivileged matters) and Fed. R. Civ. P. 45(d)(3)(A)(iii) (Court "must" quash a subpoena that "requires the disclosure of privileged or other protected matter").

The task of collecting, reviewing, and logging the wholly irrelevant, yet exceedingly voluminous privileged[4] and/or work-product materials[5] related to numerous prior claims and/or civil actions involving Fox News (public or confidential) or Butowsky would be a monumental one, serving no legitimate purpose (much less one that in any way furthers the Underlying Action) and unachievable by a small law firm within the time constraints provided by the Subpoena.  *See* Wigdor Decl. at ¶ 45.  Accordingly, Wigdor has prepared and submitted herewith a categorical privilege log, in accordance with Local Civil Rule 26.2(a)(2), which provides the description of the files and types of materials withheld, the Wigdor attorneys involved in such attorney-client communications and/or the preparation of drafts and other work-product, as well

---

[4] "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

[5] The work-product doctrine protects all documents "prepared in anticipation of litigation."  Fed. R. Civ. P. Rule 26(b)(3); *see also Bogan v. NW. Mut. Life Ins. Co.*, 163 F.R.D. 460, 462-63 (S.D.N.Y. 1995).

as the time periods related to such files.  *See* Wigdor Decl. at ¶¶ 45-46 and **Exh. 9** (Categorical Privilege Log).

Underscoring the wholly improper nature of the Subpoena, the privileged documents and other materials that are sought through and arguably responsive to Butowsky's requests would include, but not be limited to: (a) the names of individuals who Wigdor represented in claims against Fox News (whose identities may or may not have ever been publicly disclosed through a court filing); (b) the claims and underlying facts and information supporting such claims of clients represented by Wigdor against Fox News (almost always heavily sensitive and confidential in nature, and much of which has never been publicly disclosed); (c) the names of individuals at Fox News accused of wrongdoing, whose identities and/or purported misconduct has never been publicly disclosed; (d) information concerning the resolution of the claims of clients represented by Wigdor against Fox News, including the amounts, if any, of any monetary settlements, and the terms, if any, of any non-monetary resolutions; and (e) virtually the entire case files of clients represented by Wigdor against Fox News whose claims bear no relation whatsoever to any claim, allegation, or defense in the *Folkenflik* Action.  *See* Wigdor Decl. at ¶¶ 45-46 and **Exh. 9** (Categorical Privilege Log).

Because the Subpoena calls for the production of documents and other materials that are protected from disclosure pursuant to the attorney-client privilege and attorney work-product doctrine, and are otherwise simply irrelevant to the *Folkenflik* Action and/or call for the production of documents that are extremely sensitive and confidential, the disclosure of which would cause irreparable harm to a significant number of people, including Wigdor clients and individuals accused of various wrongdoings, it is respectfully submitted that this Court <u>must</u> quash the Subpoena.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (providing that the Court "must quash

or modify a subpoena that: … (iii) requires the disclosure of privileged or other protected matter, if no exception or waiver applies"); *see also In re BCE West, L.P.*, 2000 U.S. Dist. LEXIS 12590, at \*6-\*7 (S.D.N.Y. Aug. 31, 2000) (quashing subpoena directed to non-party law firm insofar as the subpoena sought the disclosure of privileged materials).[6]

## III.   THE NON-PARTY SUBPOENA TO WIGDOR MUST BE QUASHED BECAUSE IT WAS BROUGHT FOR AN IMPROPER, HARASSING PURPOSE AND WOULD IMPOSE AN UNDUE BURDEN UPON WIGDOR

### A.   The Subpoena Should Be Quashed Because Butowsky Issued the Subpoena for Improper Purposes and to Harass Wigdor

The Federal Rules of Civil Procedure make clear that discovery cannot be used as a form of oppression or harassment (by imposing an undue burden or for any other improper purpose). *See* Fed. R. Civ. P. 26(c)(1) (providing that the Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense"); Fed. R. Civ. P. 45(d)(1) (providing that a party issuing a non-party subpoena has the responsibility to take reasonable steps to avoid imposing undue burden or expense upon a non-party; authorizing sanctions upon an issuing party who fails to comply) and 45(d)(3)(A)(iii) (providing that the Court must quash a subpoena that imposes an undue burden upon a non-party).

Here, it is clear – by Butowsky's public statements about his motives, his threatening actions toward Wigdor and its employees, and otherwise – that he issued the Subpoena to Wigdor for improper purposes and to harass, and that the Subpoena should accordingly be quashed. *See, e.g., Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (a

---

[6]   Various communications between Wigdor and counsel for Fox News are similarly protected confidential settlement communications. *See* Fed. R. Evid. 408.  In any event, the pendency (and status) of the various civil actions brought against Fox News can be established via publicly available materials, including but not limited to the publicly-available docket sheets for those actions.

factor to consider on a motion to quash is whether "the subpoena was issued primarily for purposes of harassment"); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information.").

*First*, the Court need not look further than Butowsky's publicly-stated intent:  "Anybody who did anything negative to me as a result of the lawsuit will pay. […]   **I'm going to sue the hell out of a lot of firms.  I want to see these people choke on their nerves** and go through the same crap I had to go through."  *See* Wigdor Decl., **Exh.** 3 (Investment News article) (emphasis added).  Butowsky's conduct confirms his intent to harass Wigdor (and other attorneys and law firms) via litigation.  Not only did Butowsky repeatedly threaten and attempt to contact Wigdor's current and former attorneys and employees prior to his initiation of the *Folkenflik* Action (*see* Wigdor Decl. at ¶¶ 12-19), but the Subpoena (exceedingly broad both as to scope and subject matter) was issued just days before Butowsky vexatiously filed suit against Wigdor in a separate action in the Eastern District of Texas (despite the fact that Butowsky previously waived any and all claims against Wigdor).  *See id.* at ¶ 32 and **Exhs. 4-6**.  As Butowsky's Subpoena was issued for purposes of harassment, it should be quashed for this reason alone.

*Second* and independently, it is also clear that Butowsky improperly issued the Subpoena in an effort to obtain pre-motion discovery from Wigdor as to the claims/theories alleged by Butowsky in the *Wigdor* Action.  Notably, Butowsky conspicuously has not yet served the summons and complaint against Wigdor in the *Wigdor* Action, but nonetheless is improperly pursuing document discovery via a non-party subpoena as to a host of matters that are entirely irrelevant to the claims or defenses in the *Folkenflik* Action (as discussed further herein).  Such

an abusive, attempt at an end-run around the governing rules of discovery is improper, and the Subpoena should be quashed for this independent basis. *See Burns v. Bank of America*, No. 03 Civ. 1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, at *43-44 (S.D.N.Y. June 4, 2007) (granting motion to quash subpoena that "appears to have been served by plaintiffs in an effort to circumvent the regular discovery process").

*Third*, and underscoring the improper and harassing motivations behind Butowsky's actions, Butowsky had previously covenanted not to sue and fully waived any and all rights he may have had to sue Wigdor or to initiate *proceedings* against Wigdor.  Unquestionably, issuing a Rule 45 subpoena to Wigdor, the non-compliance with which would subject Wigdor to contempt of court, constitutes the initiation of a proceeding. *See, e.g., J. & W. Seligman & Co. v. Spitzer,* No. 05 Civ. 7781 (KMW), 2007 U.S. Dist. LEXIS 71881, at *15 (S.D.N.Y. Sept. 26, 2007) (holding that the issuance of a subpoena constitutes an ongoing proceeding sufficient to provide basis for abstention) (collecting cases).  Specifically, Butowsky entered into a written agreement with Fox News, executed August 1, 2018, governed by New York law (the "Agreement," a partially redacted version of which has been submitted to the Court as **Exh. 4** to the Wigdor Decl.).  The Agreement specifically provided (in relevant part) that: "Butowsky … hereby covenants and represents that, to the fullest extent permitted by law, Butowsky … will not institute[] any complaints, claims, charges, actions, proceedings or lawsuits with any governmental agency or any court … against any of the parties in the Actions [defined to include the *Wheeler* Action] or their respective attorneys [*i.e.,* Wigdor] … that arise directly or indirectly out of, involve, or in any way relate to the Actions or the facts and circumstances leading up to the Actions …."  *See* Wigdor Decl., **Exh. 4** at ¶ 4 (emphasis added).

There is no doubt that, as expressly provided for in the Agreement, Wigdor (as Wheeler's attorneys) is an intended third-party beneficiary of Butowsky's covenant not to sue and waiver of claims and proceedings.  Even Fox News (Butowsky's counterparty and the party receiving the benefit of Butowsky's promises and representations set forth in the Agreement) itself advised Butowsky that it intended for Wigdor to be an intended third-party beneficiary in exchange for valuable consideration, and that Butowsky's commencement of any claim against Wigdor would be a material breach of the Agreement.  *See* Wigdor Decl., **Exh. 5** at 1-2 (referring to paragraph 4 of the Agreement and stating: "There can be no dispute that Mr. Wheeler was a party in the *Wheeler* action, nor that his attorneys were Wigdor LLP.  Accordingly, Mr. Butowsky expressly waived any right to bring any claims against Mr. Wheeler or Wigdor LLP.")[7]; *see also West Chelsea Bldgs. LLC v. United States*, 109 Fed. Cl. 5, 23-25 (Fed. Cl. 2013) (holding that the United States, as a non-party to a contract, could enforce contractual provision pursuant to which plaintiffs agreed "not to sue or join any action seeking compensation from … The United States of America or any of its departments or agencies").

Because Butowsky's Subpoena was issued for purposes of harassment and oppression, and because Butowsky waived any right he may have had to commence any proceeding against Wigdor, the Subpoena should be quashed in its entirety.  *See* Fed. R. Civ. P. 26(c)(1).

---

[7]  Notably, the fact that paragraph 4 of the Agreement contains certain express carve outs regarding legal proceedings that Butowsky *could* pursue arising from the *Wheeler* Action (not applicable or relevant here), only further affirms that any other proceedings or lawsuits, such as Butowsky's subpoena to Wigdor and the *Wigdor* Action, are barred.  *See* Wigdor Decl., **Exh. 4** at ¶ 4.

**B.      The Subpoena Should Be Quashed Because It Seeks Irrelevant Materials and Otherwise Would Impose an Undue Burden Upon Non-Party Wigdor**

Butowsky's document Subpoena to Wigdor must be quashed on the independent ground that it seeks materials that are wholly irrelevant to the *Folkenflik* Action and would otherwise impose an undue burden upon non-party Wigdor.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (providing that the Court "must quash or modify a subpoena that: … (iv) subjects a person to undue burden"); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318 (GBD)(BCM), 2018 U.S. Dist. LEXIS 205600, at *15-16 (S.D.N.Y. Nov. 30, 2018) (granting motion to quash, noting that: "Like discovery requests served on parties, subpoenas issued to non-parties pursuant to Fed. R. Civ. P. 45 are subject to the relevance requirement of Rule 26(b)(1).") (internal quotation marks and citations omitted); *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 5067 (JFK) (JLC), 2017 U.S. Dist. LEXIS 171685, at *52-*55 (S.D.N.Y. Oct. 17, 2017) (quashing subpoena under Rules 26(b)(1) and 45(d) where the issuer "failed to articulate a credible theory of the relevance of the material it seeks" and where "the material sought would pose a burden on the non-parties involved").

The standards governing a motion to quash a non-party subpoena are well-established. First, "[t]he party seeking discovery bears the initial burden of proving the discovery is relevant" and meets the criteria of Rule 26(b)(1), including whether the discovery sought is "proportional to the needs of the case."  *Mackey v. IDT Energy, Inc.*, No. 19 Misc. 29 (PAE), 2019 U.S. Dist. LEXIS 77101, at *7-8 (S.D.N.Y May 7, 2019) (quoting Rule 26(b)(1)).  Only once the party seeking discovery satisfies its burden of establishing the relevance of the discovery would the burden then shift to the movant to demonstrate undue burden.

> Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are

described and the burden imposed.  Where a subpoena seeks discovery from a non-party, the district court may consider factors such as the expense or inconvenience that compliance would cause.

*Id.* at *8 (citations and internal quotation marks omitted); *see also Blake Marine Grp., LLC v. Frenkel & Co.*, No. 18 Civ. 10759 (AT) (KHP), 2019 U.S. Dist. LEXIS 66399, at *3 (S.D.N.Y. Apr. 16, 2019).

In considering the factors of relevance and burden, "the 'Court engages in a balancing test to determine whether undue burden exists' because a subpoena is unreasonable;" courts do not hesitate to quash subpoenas where there is a undue burden to the nonparty, and where "the relevance of the proposed [discovery] is, at best, marginal."  *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226, 228 (S.D.N.Y. 2013) (applying balancing test and quashing subpoena); *see also Blake Marine*, 2019 U.S. Dist. LEXIS 66399, at *3-4 (same); *Homeward Residential*, 2017 U.S. Dist. LEXIS 171685, at *55-56 (same).

As further set forth below, where, as here, a subpoena "pursues material with little apparent or likely relevance to the subject matter … [it] is likely to be quashed as unreasonable even where the burden of compliance would not be onerous."  *Mackey*, 2019 U.S. Dist. LEXIS 77101 at *7 (citation omitted).

### 1.     The Requests For Litigation Files Are Irrelevant and Unduly Burdensome

Butowsky has made no effort, as required by Rule 45, to minimize Wigdor's burden in responding to the Subpoena.  Rather, Butowsky's Subpoena does the opposite.  It requests privileged litigation files "of and concerning Butowsky or Fox News" (*see* Wigdor Decl., **Exh. 1** (Subpoena at 3 (introductory Request, and Requests Nos. 1-2, 7-14)) in a manner that is facially overbroad (and non-particularized) and seeks the production of: (a) materials wholly irrelevant to the underlying *Folkenflik* Action; and (b) privileged and highly confidential and sensitive

materials related to Wigdor's representation of numerous prior clients in disputes (unrelated to Seth Rich or the reporting that occurred following his murder) with Fox News.

Given the wrongful and enormous breadth of such requests, it would be extremely burdensome for Wigdor to even collect these materials and prepare a privilege log on a document-by-document basis.  *See* Wigdor Decl. at ¶¶ 45, 54-60 (stating that compliance with the requests would occupy Wigdor's entire Firm resources for weeks, if not months, solely for the purpose of logging protected materials).  Nor should Wigdor have to incur the burden and expense of searching electronically stored information ("ESI") only to produce a lengthy privilege log.

As detailed in the accompanying Wigdor Declaration (at ¶ 57), such a search for ESI would involve no less than 31 e-mail custodians.  *Id.*  Even narrowing such a search to the five attorneys/custodians primarily responsible for the litigations against Fox News would require the review of approximately 14 GBs of data and over 49,500 documents (representing approximately 99 days of attorney review).  *Id.* at ¶¶ 58-59 (further noting that even a search using targeted search terms would require the review, and likely privilege logging, of over 8 GBs of date and approximately 21,000 documents).  Such an undertaking would not only be expensive and entirely disruptive to Wigdor's operations, but would also be entirely disproportional to the needs of the Underlying Action.  *Id.* at ¶ 60.

The enforcement of such a burdensome and unproductive fishing expedition, particularly one motivated by improper, vindictive and retaliatory purposes, should not be condoned by the Court, and the Subpoena must be quashed as unduly burdensome.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53-54

(S.D.N.Y. 1996) (quashing non-party subpoena as unduly burdensome; refusing to modify subpoena, which contained non-particularized and overly broad requests).

2.  **The Requests Seek Materials Available to the Parties In the *Folkenflik* Action and/or Materials That Are Publicly Available**

The Federal Rules of Civil Procedure and relevant caselaw make it clear that Butowsky cannot use the non-party Subpoena to impose a burden upon Wigdor to collect, review or produce documents and other materials that are obtainable from the parties in the *Folkenflik* Action or are otherwise publicly available (and already in Butowsky's possession).  *See* Fed. R. Civ. P. 26(b)(2)(C) (providing that the Court limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also Burns*, 2007 U.S. Dist. LEXIS 40037, at *46 ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].");  *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, No. 19 Misc. 384 (AT), 2019 U.S. Dist. LEXIS 152073, at *6-7 (S.D.N.Y. Sept. 6, 2019) (quashing subpoena; holding that: "This Court may limit discovery if 'the party seeking discovery has ample opportunity to obtain the information by discovery in the action.") (citation omitted); *Concord Boat*, 169 F.R.D. at 49 (concluding that when materials are available from a party, the need for the documents from a non-party is eliminated and the court "shall protect any person who is not a party from significant expense") (*citing* Fed. R. Civ. P. 45(c)(2)(B)).

Here, Butowsky's Subpoena seeks the production of: (a) communications with Folkenflik and NPR (Requests Nos. 1-3, 7), which can be obtained from the defendants in the *Folkenflik* Action; (b) publicly-available tweets and/or press releases (Request No. 4), which materials are already in Butowsky's possession as they are cited in his Amended Complaint (*see* Wigdor

Decl., **Exh. 2**); and (c) communications with Butowsky (Requests Nos. 5, 8), which are similarly in Butowsky's possession, custody and/or control.  There is simply no reason to burden non-party Wigdor with any obligation to produce these materials, and these Subpoena Requests should accordingly be quashed.

### 3.  Butowsky's Requests Seeking Additional Communications Are Overly Broad and Irrelevant

Butowsky's Subpoena also seeks the production of "all documents" reflecting communications with and amongst various non-parties, including Malia Zimmerman and Fox News (Requests Nos. 6, 9, and 14); the Rich family (Requests Nos. 10-13); MSNBC (Request No. 15); CNN (Request No. 16); Ofcom (Request No. 17); The New York Times (Request No. 18); Bloomberg Businessweek (Request No. 19); CNBC (Request No. 20), and Wheeler, whom Wigdor no longer represents (Request Nos. 9, 10 and 11).  None of these materials are relevant to the claims or defenses raised in the *Folkenflik* Action[8] and, accordingly, these overly broad[9] and non-particularized Requests, in the nature of a fishing expedition, should be quashed in the entirety.  *See Alcon Vision,* 2019 U.S. Dist. LEXIS 152073 at *7 (quashing subpoena, concluding that: "Because the subpoena is overbroad, it places undue burden on [the non-party]."); *GMA Accessories, Inc. v. Electric Wonderland, Inc.*, No. 07 Civ. 3219 (PKC)(DF), 2012 U.S. Dist.

---

[8]  Although Butowsky alleged in the *Folkenflik* Action that defendants purportedly could be held liable for alleged defamatory statements made by Douglas Wigdor pursuant to a theory of civil conspiracy, the statements made by Douglas Wigdor (*i.e.*, as published by MSNBC, CNN, Ofcom, The New York Times, Bloomberg Businessweek, and CNBC) are all publicly available and already in Butowsky's possession, as his Amended Complaint establishes.  *See* Wigdor Decl., **Exh. 2** (Am. Cmplt.).

[9]  Furthermore, the Subpoena Requests are overly broad both as to the subject matter, as well as the time period.  The Subpoena requests any responsive materials from "May 1, 2017 through the present" (*see* Wigdor Decl., **Exh. 1** (Subpoena) at 3); yet, Butowsky's Amended Complaint does not allege *any* continuing "conspiracy" or unlawful conduct past March 2018. *See id.,* **Exh. 2** (Am. Cmplt.) at ¶ 64).  This is yet another reason why the Subpoena is overly broad, unduly burdensome and abusive, and should be quashed.

LEXIS 72897, at *16 (S.D.N.Y. May 22, 2012) ("As discovery under the Federal Rules is limited in scope to that which is 'relevant to any party's claim or defense,' [...] the court may also quash or modify a subpoena that calls for irrelevant information."); *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 U.S. Dist. LEXIS 9803, at *5-6 (S.D.N.Y. May 18, 2005) ("A subpoena that 'pursues material with little apparent or likely relevance to the subject matter,' … is likely to be quashed as unreasonable even where the burden of compliance would not be onerous."); *United States v. Int'l Business Machines Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979) (the less relevancy there is of the subpoenaed records to the underlying case, "the greater risk [the subpoena will be] found overbroad and unreasonable.").

Because the Subpoena Requests are facially overbroad, the requested materials are irrelevant to the *Folkenflik* Action, and the undue burden of searching for, reviewing, and producing such materials far outweighs any marginal (if any) relevance of the materials, the Subpoena should be quashed.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

## IV.   TO THE EXTENT THAT ANY COMPLIANCE WITH THE SUBPOENA IS ORDERED, BUTOWSKY MUST BE REQUIRED TO PAY WIGDOR'S REASONABLE COSTS AND EXPENSES

In the event that the Court determines to quash the Subpoena in its entirety, this Court must award reasonable legal fees to Wigdor.  *See* Fed. R. Civ. P. 45(d)(1).  However, if the Court does not quash the Subpoena in its entirety, it is nevertheless appropriate for Wigdor to be compensated for the time and costs of its compliance.  *See* Fed. R. Civ. P. 45(d)(3)(C)(ii).

Rule 45 directs courts to minimize the burden on nonparties, with cost-shifting recognized as being "particularly appropriate in the context of subpoenas."  *US Bank Nat'l Ass'n v. PHL Variable Ins. Co*., No. 12 Civ. 6811 (CM) (JCF), 2012 U.S. Dist. LEXIS 158448, at *11-12 (S.D.N.Y. Nov. 5, 2012) (collecting cases).  If the Court determines that the Subpoena should be quashed, the Court "*must* . . . impose an appropriate sanction – which may include . . .

23

reasonable attorney's fees."  Fed. R. Civ. P. 45(d)(1) (emphasis added); *see also Sonoma County Ass'n of Retired Employees v. Sonoma County*, No. 15 Misc. 191 (LTS), 2015 U.S. Dist. LEXIS 177919, at *4-5 (S.D.N.Y. Oct. 6, 2015).

If the Court does not quash the Subpoena in its entirety, Butowsky should be required to bear the cost of the discovery he seeks.  Because cost-shifting promotes efficiency in discovery, "[c]ourts have deemed [the provisions of Rule 45] to ma[k]e cost shifting *mandatory* in all instances in which a non-party incurs significant expense from compliance with a subpoena." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*, No. 09 Civ. 3855 (JS) (AYS), 2018 U.S. Dist. LEXIS 58729, at *10-11 (E.D.N.Y. Mar. 31, 2018) (emphasis added) (*citing Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)) (internal quotations and punctuation omitted); *see also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 748 (CM)(JCF), 2017 U.S. Dist. LEXIS 139983, at *29 (S.D.N.Y. Aug. 30, 2017) (concluding that cost shifting was "particularly appropriate … since Rule 45 directs courts to minimize the burden on non-parties").

## <u>CONCLUSION</u>

For the reasons set forth above, non-party Wigdor LLP respectfully requests that this Court enter an Order (a) granting its motion to quash the Subpoena in its entirety, with an award of costs and reasonable expenses to Wigdor; or, in the alternative, (b) modifying the Subpoena and ordering Butowsky to pay Wigdor's costs and fees related to any Subpoena response; and (c) awarding Wigdor such other and further relief as this Court deems just and proper.


Dated: New York, New York
      September 30, 2019          LOEB & LOEB LLP

                         By:  /s/  *John A. Piskora*
                             Michael P. Zweig
                             mzweig@loeb.com
                             John A. Piskora
                             jpiskora@loeb.com
                             345 Park Avenue
                             New York, NY 10154
                             Tel. 212.407.4000

                             *Attorneys for Non-Party Movant*
                             *Wigdor LLP*