UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
IN THE MATTER OF A NON-PARTY             :
DOCUMENT SUBPOENA SERVED IN:             :
                                         :   Misc. Civil Case No. _____
ED BUTOWSKY,                             :
                                         :
                         Plaintiff,      :
         v.                              :
                                         :
DAVID FOLKENFLIK, *et al.*,              :
                                         :
                         Defendants.     :
                                         :
------------------------------------------------------------------ X

## DECLARATION OF DOUGLAS WIGDOR
## IN SUPPORT OF NON-PARTY WIGDOR LLP'S
## MOTION TO QUASH ED BUTOWSKY'S DOCUMENT SUBPOENA

I, Douglas Wigdor, hereby declare as follows:

1. I am the founding partner of non-party Wigdor LLP ("Wigdor" or the "Firm"). I have personal knowledge of the matters asserted herein and respectfully submit this declaration in support of Wigdor's Motion to Quash the document subpoena (the "Subpoena," attached as **Exhibit 1** hereto) issued by counsel for Plaintiff Ed Butowsky in connection with the civil action, pending before the United States District Court for the Eastern District of Texas, entitled *Butowsky v. Folkenflik, et al.* No. 18 Civ. 442 (ALM)(CMC) (E.D. Tex.) (the "*Folkenflik* Action"). Butowsky's Amended Complaint filed in the *Folkenflik* Action is attached as **Exhibit 2** hereto.

2. As set forth more fully herein, and in Wigdor's accompanying Memorandum of Law, Wigdor respectfully submits that the Subpoena should be quashed, pursuant to Federal Rule of Civil Procedure ("Rule") 26 and 45 on the grounds that the Subpoena: (a) seeks the production of documents and materials that are privileged and/or otherwise protected from disclosure; and (b) imposes an undue burden upon non-party Wigdor (by the issuance of facially

overbroad requests that are substantially irrelevant to the claims or defenses in the underlying litigation and which requests were made for improper purposes, including – as Butowsky himself has publicly stated – to wrongly harass and burden Wigdor as retribution for serving as opposing counsel in a prior civil action filed against Butowsky. *See, e.g.,* **Exhibit 3** (Investment News article by Jeff Benjamin, dated Aug. 6, 2018, entitled *Exonerated in defamation suits, Ed Butowsky is out for blood*) ("'Anybody who did anything negative to me as a result of the lawsuit will pay,' Mr. Butowsky said Monday. **'I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves** and go through the same crap I had to go through.'") (emphasis added).

## Relevant Background

### I.   Wigdor LLP

3.    Wigdor LLP (or the "Firm") is a small litigation firm, specializing in plaintiffs'-side employment and sexual assault litigation. Located in New York City, the Firm is comprised of only 12 attorneys, one law clerk and approximately 12 support staff.

4.    As set forth further below, Wigdor previously served as counsel for a number of parties who have asserted claims (both publicly and confidentially) against Fox News Network LLC and/or Twenty-First Century Fox (collectively, "Fox News"). As a result of such representation, Wigdor is in possession of voluminous materials protected from disclosure pursuant to the attorney-client privilege, attorney work-product doctrine, as well as other privileges (including, but not limited to, the privilege applicable to confidential settlement communications).

5.    Among other litigation matters, Wigdor represented Rod Wheeler in a civil action initiated in 2017 against Fox News and Butowsky, among others, entitled *Wheeler v. Twenty-First Century Fox, et al.*, No. 17 Civ. 5807 (GBD) (S.D.N.Y.) (the "*Wheeler* Action").

II.   Summary of the Prior Litigation Against Butowsky

6.   The Second Circuit Court of Appeals, in a recent opinion in a separate matter, succinctly summarized the underlying facts and events:

> On July 10, 2016, Seth Rich—a 27-year-old DNC staffer—was shot and killed a few hundred feet from his home in Washington, D.C. The Metropolitan Police Department determined, and continues to believe, that his unsolved murder stemmed from a botched robbery.
>
> Soon after Seth's death, a "conspiracy theory" emerged among "fringe" political groups. The theory was that "Seth had leaked thousands of DNC emails to WikiLeaks" and was murdered as a result. [...] Seth's parents, the Riches, objected to this theory and issued a statement asking the public to "refrain from pushing unproven and harmful theories about Seth's murder." Despite this statement, the Appellees [e.g., Fox News] in the case before us set out "to take the conspiracy theory from the fringe [and move it] to the front pages and screens of the mainstream media." [...] To do this, they allegedly orchestrated a plan to turn the Riches into unwitting collaborators in their scheme. [...]
>
> Specifically, in December 2016, Ed Butowsky, a guest commentator on Fox News, contacted Seth's parents, Joel and Mary Rich. [...]
>
> Playing on the Riches' need to "to get closure, as a family," Butowsky urged them to allow him to pay for Wheeler's services [e.g., investigative services]. [...] Butowsky falsely assured the Riches that, "although he would finance Joel and Mary's retention of Wheeler, Butowsky would respect Wheeler's legal obligation not to speak to him [] or anyone other than Joel and Mary about the investigation." [...] In the end, Joel and Mary were persuaded.
>
> On May 10, in order to bring the untrue story to publication, Butowsky and Zimmerman called Wheeler "to falsely inform him that they had developed an FBI source supposedly confirming" that Seth had been in contact with WikiLeaks. [...]
>
> Soon after, Wheeler became the named source in the Fox News articles about Seth's murder.

*Rich v. Fox News Network, LLC*, 2019 U.S. App. LEXIS 27633, at *3-*8 (2d Cir. Sept. 13, 2019) (internal citations omitted).

7.   Prior to filing the *Wheeler* Action, on June 23, 2017, I sent a letter to Ed Butowsky via e-mail advising him of Mr. Wheeler's intent to file a claim for defamation arising out of an article published by Fox News which allegedly falsely misattributed certain quotes to

Mr. Wheeler. The letter contained an invitation to resolve the matter amicably, and a reminder to preserve all documents related to the matter.

8. Within hours of sending my letter, Butowsky left me a voicemail wherein he threatened to move for sanctions. This notion was echoed in a June 26, 2017 letter from Butowsky's counsel, David Harrison, Esq., notwithstanding Mr. Harrison's admission that he was "confused," had "no idea" what Mr. Wheeler's claims entailed and had no notice of "what this lawsuit is about."

9. On August 1, 2017, Mr. Wheeler (by his counsel, Wigdor) commenced the *Wheeler* Action before the District Court for the Southern District of New York. Therein, Mr. Wheeler alleged causes of action for, *inter alia*, defamation *per se* based on certain comments and conduct alleged to have been engaged in by Butowsky. In particular, with regard to the statements that Mr. Wheeler alleged were falsely attributed to him, he further alleged that Butowsky admitted that: **"Well I know that's not true . . . I've never heard you say that." "If I'm under oath I would say I never heard [Mr. Wheeler] say that.**" Mr. Wheeler further alleged that Butowsky told him during a separate conversation that Wheeler would one day "win an award for having said those things *you didn't say.*"

10. On September 19, 2017, Butowsky filed a motion for sanctions pursuant to Rule 11. Separately, on December 1, 2017, Butowsky and Fox News separately filed motions to dismiss Mr. Wheeler's amended claims.

11. Following full briefing on the motions and a February 28, 2018 oral argument before the Honorable George B. Daniels, Wigdor moved on May 14, 2018 to withdraw as Mr. Wheeler's counsel. That motion was granted by Order dated May 30, 2018.

12. Shortly thereafter, Butowsky called me directly and left me two threatening voicemails. The first voicemail was received on June 26, 2018 at approximately 4:33 p.m. In it, Butowsky, *inter alia*: (i) requested an opportunity to meet with me and my partners Jeanne M. Christensen and Michael J. Willemin; (ii) stated that "we have a number of things to discuss;" and (iii) closed with, "we have a lot to talk about, Doug."

13. The following day, June 27, 2018, Mr. Willemin and Ms. Christensen called Butowsky's attorney, Mr. Harrison, leaving a voicemail informing him that we were not interested in meeting with Butowsky and that Butowsky should not be calling us.

14. Very shortly after our attempts to speak with Mr. Harrison, Mr. Butowsky left me a second voicemail stating:

> I didn't call to then have you call David Harrison. I called to find out a date and a time that we're gonna sit down and talk, and you and I got a lot to talk about. So, we need to do this face to face and, again I'd like you to have Wilhelm [*sic*] and Christensen in the office – if not that's fine with me.
>
> We don't even have to do it in your office. We can do it in your hometown. We can meet someplace in New York. But you and I need to talk. We've got a lot of stuff we need to work out Doug. So, if you're not gonna meet you can, you know, start there. But you can communicate directly with me. I, um, left you my cell, [xxx-xxx-xxxx].
>
> But Doug, you and I have a lot to catch up on, a lot to discuss. So look forward to it. Let's try to carve out a couple hours okay. I will see you soon Doug.

15. Following receipt of the second voicemail, Mr. Willemin and Ms. Christensen again called Mr. Harrison. Mr. Harrison informed them that he had already advised Butowsky not to contact us and that he would do so again, but that he only had limited control over Butowsky's actions.

16. Later that day, Wigdor submitted the voicemails to Judge Daniels and requested an order directing Butowsky to cease and desist from contacting me and my colleagues.

17. On July 12, 2018, Judge Daniels ordered that "Mr. Butowsky should follow the advice of his counsel and not attempt to contact any of Mr. Wheeler's former attorneys or the law firm of Wigdor LLP."

18. Despite Judge Daniels' Order and in disregard thereof, Butowsky embarked on another round of threatening and harassing behavior towards Wigdor. On July 18, 2018, Butowsky emailed Mr. Willemin with the subject line, "you might want to have this." The body of the email contained a link to a YouTube video entitled "Michael Willemin of Wigdor LLC [sic] attorney for Rod Wheeler goes with Botched Robbery story." The video is a spliced and tampered recording of an interview with Mr. Willemin about Mr. Wheeler's suit.

19. Less than an hour later, Butowsky sent Mr. Willemin a second email, using the same subject line, "you might want to have this," and wrote, "Please disregard. I meant to send to someone else. My apologies."

20. On August 2, 2018, Judge Daniels entered a Memorandum Decision and Order dismissing Mr. Wheeler's claims. Therein, the Court concluded that the alleged defamatory statements could not be provably false. In the same Order, Judge Daniels denied Butowsky's Rule 11 motion for sanctions.

III. Butowsky Threatens Wrongful and Abusive Retaliatory Litigation

21. Just days after this Court denied his sanctions motion, Butowsky is quoted in an *Investment News* article as saying: "Anybody who did anything negative to me as a result of the lawsuit will pay. … **I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves** and go through the same crap I had to go through." *See* **Exhibit 3** (emphasis added).

22.   Butowsky is now attempting to make good on this vow. To do so, he has enlisted two lawyers who have been subject to discipline by various courts.[1]

A.  *Butowsky v. Susman & Godfrey* – Butowsky sues Counsel for the Riches

23.   On March 6, 2019, Butowsky filed a lawsuit against the law firm Susman & Godfrey, LLP in the 416th District Court in Collin County, Texas, entitled *Butowsky v. Susman & Godfrey, LLP*, No. 416-01222-2019, alleging, *inter alia*, defamation and malicious prosecution (the "*Susman* Action").

24.   Susman & Godfrey represent Joel and Mary Rich, the parents of Seth Rich, in the action *Joel and Mary Rich v. Fox News Network, LLC, et al.* No. 18 Civ. 2223 (GBD) (S.D.N.Y.) (the "*Rich* Action"). The Riches allege that Butowsky and others at Fox News intentionally inflicted emotional distress on the Riches by publishing a story that implied that Mr. Rich was responsible for the leaking of emails from the Democratic National Committee ("DNC") during the 2016 presidential election. The *Rich* Action was initially dismissed by Order of Judge Daniels on the same date that the *Wheeler* Action was dismissed. *But see Rich v. Fox News Network, LLC*, 2019 U.S. App. LEXIS 27633 (2d Cir. Sept. 13, 2019) (vacating dismissal order).

25.   The *Susman* Action was dismissed on June 21, 2019 by the Honorable Andrea S. Thompson, who held that Butowsky had failed to establish, by clear and specific evidence, a

---

[1]   Enabling Butowsky's allegations of conspiracies and defamation are his current counsel, Ty Clevenger, Esq. and Steven Biss, Esq. Publicly available documents reveal that Mr. Clevenger has an extensive history of attorney misconduct and discipline, including: (1) sanctions imposed by the United States District Court for the Western District of Texas; (2) sanctions imposed by the D.C. District Court, the D.C. Bankruptcy Court, and the D.C. Circuit Court of Appeals; (3) a reprimand imposed by the Texas State bar; and (4) a suspension and fine imposed by the bar of the D.C. District Court and Mr. Clevenger's required resignation from that bar. Mr. Biss, for his part, was suspended from practicing law in the Commonwealth of Virginia for one year and one day for, *inter alia*, "committing deliberately wrongful acts that reflected adversely on his fitness to practice law," including through a misrepresentation he made before the Southern District of New York.

*prima facie* case for each essential element of his claims, and that Susman & Godfrey established by a preponderance of the evidence the defense of attorney immunity.

B. *Butowsky v. Gottlieb* – Butowsky Sues Other Attorneys and Media Entities

26. On March 12, 2019, Butowsky initiated a separate lawsuit entitled *Butowsky v. Gottlieb, et al.*, No. 19 Civ. 0180 (ALM)(KPJ) (E.D. Tex.) (the "*Gottlieb* Action"). There, Butowsky sued no less than nine attorneys (including attorneys from Susman & Godfrey who represent the Riches in the *Rich* Action), three different law firms (Boies Schiller & Flexner LLP, Massey & Gail, LLP and Bailey & Glasser), as well as Turner Broadcasting System Inc. (*i.e.*, CNN), television personality Anderson Cooper, the New York Times, and Vox Media. Butowsky alleges claims of, *inter alia*, defamation, business disparagement, malicious prosecution, and civil conspiracy. The defendants in the *Gottlieb* Action have filed motions to dismiss Butowsky's claims, which are *sub judice*.

27. Here too, Butowsky has targeted counsel for wrongful retribution. Boies Schiller and Massey & Gail (and certain of the individual attorneys named as defendants) represent Seth Rich's brother, Aaron, in an action against Butowsky entitled *Rich v. Butowsky, et al.*, No. 18 Civ. 0681 (RJL) (D.D.C.) (the "*Aaron Rich* Action") which is pending before the United States District Court for the District of Columbia.

C. *Butowsky v. Democratic National Committee*

28. On August 1, 2019, Butowsky initiated another lawsuit, filed as a related action to the *Gottlieb* Action, entitled *Butowsky v. Democratic National Committee, et al.* (E.D. Tex. Case No. 19 Civ. 582 (ALM) (E.D. Tex.) (the "*DNC* Action"). Therein, Butowsky asserts claims against Perkins Coie LLP, the DNC, and an internet security company called CrowdStrike, Inc., alleging, *inter alia*, defamation, business disparagement, malicious prosecution, and civil

conspiracy, including an alleged conspiracy with the attorneys and law firms named in the *Susman* Action and *Gottlieb* Action to defame him.

D. *Butowsky v. Charles Schwab Co.*

29. On August 3, 2018, Butowsky (together with his investment company, Chapwood Capital Investment Management, LLC), filed a lawsuit against Charles Schwab Corporation and others entitled *Butowsky v. Charles Schwab Co., et al.* No. 18 Civ. 0548 (ALM)(KPJ) (E.D. Tex.) (the "*Charles Schwab* Action"). Therein, Butowsky alleges claims of defamation, business disparagement, tortious interference and breach of contract, and seeks $100,000,000.00 in compensatory damages in addition to punitive damages and interest. This litigation was compelled to arbitration in March 2019.

E. *Butowsky v. Wigdor* – Butowsky Separately Sues Wigdor in Texas

30. Butowsky's attempts to threaten and harass Wigdor and its attorneys did not cease, even after the *Wheeler* Action was dismissed and Butowsky's motion for sanctions was denied. Rather, Butowsky continued to contact Wigdor employees:

- On March 18, 2018, Butowsky sent me, and two of my partners, an unsolicited email with no subject line, but with only a link to an article appearing in the Daily Mail about the *Gottlieb* Action in the body of the email.

- On March 24, 2019, Butowsky sent an unsolicited private message through the LinkedIn social media platform ("LinkedIn") to a Wigdor intern stating: "We should talk." Butowsky then asked: "Do you recognize my name?" Receiving no response, Butowsky then wrote (in bold): **"We should talk immediately. XXX.XXX.XXXX**[2] What is your best physical address?"

- That same day, March 24, 2019, Butowsky also messaged (via LinkedIn) a Wigdor attorney asking her to "please call me XXX.XXX.XXXX".

- On March 25, 2019, Butowsky sent a message (via LinkedIn) to another Wigdor attorney with a subject line of "Feel free to call XXX.XXX.XXXX", asking: "What is your address? We have something to mail you"[.]

---

[2] Butowsky's stated personal phone number is redacted herein.

- On March 26, 2019, Butowsky sent a message (via LinkedIn) to a Wigdor paralegal telling her to "please call me XXX.XXX.XXXX need to get some clarification on your role in something".

- Butowsky even sent a LinkedIn message to a Wigdor intern from Ireland, asking her to "please call me XXX.XXX.XXXX have some questions for you".

- Around this time, Butowsky also called several former Wigdor employees requesting that they call him "immediately."

31. On November 30, 2018, Butowsky's counsel Ty Clevenger sent me a letter concerning "litigation that [Butowsky] plans to file in Texas against" me, the Firm and two of my partners in relation to our representation of Mr. Wheeler.

32. After this letter was sent, I learned that an attorney for Fox News, Joseph A. Piesco, Esq. of DLA Piper LLP, had written to Clevenger citing an August 1, 2018 agreement between Butowsky and Fox News (attached hereto in redacted form as **Exhibit 4**) precluding Butowsky from ever bringing any actions or proceedings against Mr. Wheeler or his counsel arising out of the *Wheeler* Action. On April 16, 2019, Mr. Piesco wrote again to Mr. Clevenger (attached hereto as **Exhibit 5**) warning him that Butowsky would be in breach of his agreement with Fox News if he were to initiate a lawsuit against me, Wigdor, or Mr. Wheeler based on an "unequivocal[] waive[r of] his right to file any such claims." Mr. Piesco made clear Fox News' position that "Mr. Butowsky expressly waived any right to bring any claims against Mr. Wheeler or Wigdor LLP."

33. Notwithstanding the foregoing, on July 31, 2019, Butowsky filed an action entitled *Butowsky v. Wigdor, et al.* No. 19 Civ. 0577 (ALM) (E.D. Tex.) (the "*Wigdor* Action") against me, the Firm, and Mr. Wheeler. Therein (*see* Complaint attached hereto as **Exhibit 6**), Butowsky alleges claims for defamation, business disparagement, civil conspiracy, and civil RICO, and seeks "compensatory damages, Punitive damages and Treble damages in the sum of

$118,000,0000.00 or such greater amount as is determined by the Jury." To date, Butowsky has failed to serve the Summons and Complaint.

34. In all, and to the extent known to me from publicly filed documents, Butowsky has initiated (as part of his publicly-stated campaign of wrongful retribution) no less than six separate civil actions related to Seth Rich's tragic murder, Butowsky's participation in the investigation thereof, and Fox News's long since-retracted article tying Mr. Rich's death to the DNC email leak, against more than 40 individual and corporate entities/law firms/attorneys seeking over $280 million in damages.[3]

F. The *Folkenflik* Action and the Non-Party Document Subpoena Issued to Wigdor

35. On June 21, 2018, Butowsky filed the underlying *Folkenflik* Action against Defendants David Folkenflik (a reporter), National Public Radio, Inc. ("NPR") and a number of additional NPR-related individuals.

36. In his Amended Complaint (*see* **Exhibit 2**) Butowsky alleges, *inter alia*, claims of defamation, business disparagement, and civil conspiracy, and seeks a compensatory damages award of no less than $57,000,000, in addition to punitive damages and interest.

37. In connection with the *Folkenflik* Action, Butowsky (by his counsel Steven Biss) issued a non-party document subpoena (the "Subpoena," attached as **Exhibit 1**), dated July 24, 2019, to Wigdor.

---

[3] Butowsky's propensity for misconduct appears unconstrained. Based upon publicly-available materials, Butowsky has been sued: (a) for allegedly defrauding a law firm in connection with his retention of that firm and subsequent refusal to pay it for services rendered (*see Shamoun & Norman, LLP v. Butowsky, et al.*, Cause No. CC-11-08010-E (Dallas County); (b) for fraud in connection with claims that he induced an individual to invest $1,500,000 in his company, but then failed to make required distributions to the investor and refused to provide requested financial statements (*see Noble v. Butowsky, et al.*, Cause No. DC-09-06903-C (Dallas County)); and (c) for fraud against a former client, in which matter Butowsky and former employer were ordered to pay the client $300,000 (*see Mariani v. Butowsky, et al.*, FINRA Case No.: 03-05543).

38. By a series of written communications (attached as **Exhibits 7-8** hereto) between counsel for Wigdor and counsel for Butowsky, Wigdor's time to respond to the Subpoena (without waiver and reserving the right to pursue all defenses other than service) was extended until September 30, 2019.

39. Accordingly, the current motion to quash is timely.

IV. <u>The Subpoena Must Be Quashed Because It Calls For The Production of Privileged Materials</u>

40. As an initial matter, Butowsky's non-party document Subpoena to Wigdor must be quashed because the Subpoena plainly calls for the production of materials that are protected from disclosure pursuant to the attorney-client privilege, attorney work-product doctrine, and/or other applicable privileges (including but not limited the privilege governing confidential settlement communications).

41. Butowsky and his attorneys clearly knew when they issued the Subpoena to Wigdor, a law firm, that Butowsky's overbroad and non-particularized requests sought privileged documents and communications. Yet, Butowsky failed to make any effort to limit the scope of the Subpoena or to otherwise minimize Wigdor's burden in responding to such facially overbroad requests.

42. More specifically, and notwithstanding that Butowsky and his counsel are well aware that Wigdor has represented numerous clients in advancing claims against Fox News (*see* **Exhibit 2** at ¶ 29), the Subpoena calls for the production of all documents "THAT MENTION BUTOWSKY OR FOX NEWS OR THAT ARE OF AND CONCERNING BUTOWSKY OR FOX NEWS" for the period from May 1, 2017 to the present. *See* **Exhibit 1** at 3 (emphasis on original); *see also id.* at Request No. 14.

43. A number of additional Subpoena requests call for the production of Wigdor attorneys' "notes" or other documents related to or "reflect[ing] communications" with certain parties, including Folkenflik (Requests Nos. 1-2); defendants in the *Wheeler* Action (Requests Nos. 8, 9, 14); members of the Rich family (Requests Nos. 10-13); and/or various news organizations (Requests Nos. 15-20). *See* **Exhibit 1** (Subpoena). *Id.* Any and all such attorney notes and records are protected by the attorney work-product doctrine.

44. Thus, all of the Subpoena Requests that are unrelated to the parties of the *Folkenflik* Action (*e.g.*, Butowsky, Folkenflik, and NPR) and/or concerning Butowsky's co-defendants in the *Wheeler* Action, call for materials protected from disclosure by the attorney-client privilege and work product doctrine.

45. Given the enormous breadth of the Subpoena Requests calling for protected materials, it would be extremely burdensome (both in terms of time and costs, as discussed more fully below) for Wigdor to prepare a privilege log on a document-by-document basis. Accordingly, together with the submission of this current motion to quash, Wigdor has prepared a categorical privilege log (attached hereto as **Exhibit 9**), in accordance with Rule 26.2(a)(2) of this Court's Local Civil Rules, which provides a description of the files and types of materials withheld, the Wigdor attorneys involved in such files (which includes the attorneys' preparation of non-public drafts of materials; preparation of attorney notes; and communications with clients), as well as the time period related to such files.

46. As detailed in Wigdor's categorical privilege log, Wigdor has represented various clients with respect to claims and/or civil litigation as against Fox News (including but not limited to the *Wheeler* Action). The files for each of these separate matters (many of which have never been filed publicly and to this day remain strictly confidential and highly sensitive) are

voluminous, and contain attorney-client communications, as well as protected attorney notes and drafts (including materials prepared in anticipation of litigation, as well as draft materials prepared in connection with pending litigation). *See* **Exhibit 9**. Indeed, the privileged documents and other materials that are sought through and are arguably responsive to Butowsky's requests would include, but are not limited to: (a) the names of individuals who Wigdor represented in claims against Fox News (whose identities may or may not have ever been publicly disclosed through a court filing); (b) the claims and underlying facts and information supporting such claims of clients represented by Wigdor against Fox News (almost always heavily sensitive and confidential in nature, and much of which has never been publicly disclosed); (c) the names of individuals at Fox News accused of wrongdoing, whose identities and/or alleged misconduct has never been publicly disclosed; (d) information concerning the resolution of the claims or clients represented by Wigdor against Fox News, including the amounts, if any, of any monetary settlements, and the terms, if any, of any non-monetary resolutions; and (e) virtually the entire case files of clients represented by Wigdor against Fox News whose claims bear no relation whatsoever to any claim, allegation, or defense in the *Folkenflik* Action.

47. Wigdor respectfully submits that all such materials are protected from disclosure, and the Subpoena must be quashed to the extent that the overbroad Requests seeks the production of any such attorney-client privileged communication or other materials protected from disclosure pursuant to the attorney work-product doctrine. The Subpoena should also be quashed on the independent grounds that it unjustifiably and harassingly calls for the production of documents that are extremely sensitive and confidential, the disclosure of which would cause

irreparable harm to a significant number of people, including Wigdor's clients and individuals accused of wrongdoing.

### V. The Subpoena Must Be Quashed Because It Was Issued for an Improper Purpose and Imposes an Undue Burden Upon Non-Party Wigdor

48. Separately and independently, Butowsky's Subpoena to Wigdor must be quashed in the entirety because it: (a) was issued for improper purposes (*i.e.*, to harass and burden Wigdor, as well as an improper attempt to secure discovery in the improperly commenced *Wigdor* Action); and (b) improperly and intentionally attempts to impose an enormous burden upon Wigdor.

49. Butowsky has not been shy in stating that it is his intent to harass and burden both his current and former adversaries (and their attorneys). To the contrary, Butowsky has been quoted as stating that: "Anybody who did anything negative to me as a result of the lawsuit will pay[.] **'I'm going to sue the hell out of a lot of firms. I want to see these people choke on their nerves** and go through the same crap I had to go through." *See* **Exhibit 3**. And, as stated herein, Butowsky has made good on these improper threats – both by a campaign of wrongful litigation and by the issuance of the Subpoena to Wigdor just days before Butowsky separately and improperly sued Wigdor in the Eastern District of Texas. *See* Fed. R. Civ. P. 26; *see supra* at ¶¶ 21-34.

50. Nor can there be any doubt that the Subpoena, although issued in connection with the *Folkenflik* Action, is really an attempt to obtain pre-joinder discovery in the separately-filed *Wigdor* Action. As an initial matter, many of the Subpoena Requests are entirely irrelevant to the *Folkenflik* Action. Moreover, it is notable that the Subpoena to Wigdor was issued on July 24, 2019 – just days before Butowsky initiating the *Wigdor* Action, which Butowsky has made

no effort to serve (because, Wigdor submits, he seeks pre-joinder discovery by way of the Subpoena).

51. In addition to being issued for improper purposes and as part of a campaign to wrongly harass Wigdor, the Subpoena must be quashed because it attempts to impose an undue burden upon Wigdor.

52. Butowsky and his counsel have made no efforts to minimize Wigdor's burden in respect to the production of materials as a non-party. Rather, they have taken the exact opposite approach, in violation of the applicable rules.

53. The Subpoena (a) is facially overbroad (both as to the Requests and the applicable time period) and not particularized; (b) seeks documents that are irrelevant to the underlying *Folkenflik* Action; (c) seeks documents (such as Butowsky's own communications) which are in Butowsky's possession; (d) seeks documents that are available from parties to the *Folkenflik* Action; and (e) seeks materials that are publicly available (and, in many instances cited in Butowsky's Amended Complaint).

54. In addition to the foregoing (which matters are more fully presented in Wigdor's accompany Memorandum of Law), compliance with the Subpoena would wrongly impose an enormous burden upon Wigdor, both financially and in employee time and effort, and for this reason the Subpoena should be quashed.

55. Wigdor is a small law firm currently comprised of only 12 attorneys, one law clerk, and approximately 12 support staff. For Wigdor to be obligated to pull entire litigation files related to prior claims/suits against Fox News, and to sort through these files for responsiveness and/or the logging of privileged materials and work product, would likely occupy the entire Firm's resources for weeks, if not months, and totally upset the normal day-to-day

functions of the Firm (including our fiduciary obligations to current clients). For this reason alone, the Subpoena should be quashed for wrongly imposing an undue burden.

56. Separately and equally significantly, the Subpoena imposes an undue burden upon Wigdor insofar as it would require Wigdor to search for electronically stored information ("ESI"), including, but not limited to, Wigdor's e-mail systems (in respect to all current or former employees of the Firm) and document storage and management systems (which would contain substantial materials and drafts protected from disclosure pursuant to the attorney work-product doctrine).

57. By way of example only, searching for documents responsive to the Subpoena would require retrieving and searching through the ESI of no less than 31 custodians, including 12 Wigdor attorneys, 13 paralegals, 5 administrative support staff, and 1 summer associate/law clerk.

58. Searches for responsive documents within the data files saved on Wigdor's servers related to matters against Fox News and of the ESI for the five Wigdor attorneys who were most involved in the Fox News matters alone would require searching through 14 GBs of data, and over 49,500 documents. To review these materials for responsiveness and privilege would require 99 attorney-days of full-time document review (presuming an 8-hour review day and an average review pace of 500 documents per hour) – an undertaking that would totally disrupt Wigdor's day-to-day operations.

59. Even a narrower search only for keywords related to the allegations in the *Folkenflik* Lawsuit, *i.e.*, for the terms ""Wheeler," "Butowsky," "Harrison," "Clevenger," "Biss," "Zimmerman," "Rod," "Folkenflik," and "NPR" within the ESI of these same five Wigdor attorneys would require searching over 8 GBs of data and 21,000 documents.

60. Of course, reviewing these immense swaths of documents and information for responsiveness, relevance, and privilege (not to mention logging privileged documents), and ultimately producing documents will require an incredible amount of attorney and paralegal time (or the hiring of outside counsel, which is extremely costly). Wigdor simply does not have the capacity to devote the manpower needed for this task while still running the day-to-day operations of a busy litigation firm.

61. For each of the foregoing reasons, Wigdor LLP respectfully submits that the non-party Subpoena should be quashed in its entirety.

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that the foregoing is true and correct. Executed this 30th day of September, 2019.

_____
DOUGLAS WIGDOR